UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JACKIE MAREESE BRIDGES, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:   07-3897**<br>       **c/w 07-4301**<br>       **[REF: 07-3897]** |
| **STANDARD CONCRETE PRODUCTS, ET AL** | **SECTION: "C" (4)** |

**ORDER AND REASONS[1]**

This matter comes before the Court on motion for summary judgment filed by defendant, Standard Concrete Products, Inc. (Rec. Doc. 21). After considering the record, the parties' memoranda and the law, the motion for summary judgment is GRANTED for the following reasons.

**I. Background**

On July 14, 2006, GC Constructors, a joint venture comprised of Massman Construction Company, Traylor Brothers, Inc., and Kiewit Southern Company, (hereinafter "GCC" collectively) entered into an agreement with Standard Concrete Products, Inc. (hereinafter "Standard") for the purchase of concrete girders for the construction of a bridge between Biloxi, Mississippi and Ocean Springs, Mississippi. Plaintiff, Jackie Bridges, a Standard employee, was assisting in loading the girders onto a moored barge owned by GCC when he was allegedly injured after a catastrophic failure of GCC's dunnage. As a result, plaintiff filed this instant action alleging Jones Act negligence, maintenance and cure, and unseaworthiness.

---

[1] Tommy Cantrell, a third-year law student at Loyola University, assisted in the preparation of this opinion.

Defendant now moves this Court for summary judgment, seeking dismissal pursuant to Fed. R. Civ. P. 56. In support of its motion, defendant asserts that the plaintiff is not a seaman as defined under the Jones Act. 33 U.S.C. § 901.

## II.     Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the discovery performed by the parties to the suit, admissions and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of first presenting the court with support for its motion as well as record evidence in support; the non-moving party must subsequently show the court that there are facts which support the need for a trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Where the nonmoving party bears the burden of proof at trial, it must go beyond the pleadings to show that there is a genuine issue of material fact. Id. If after adequate time for discovery, that party is unable to make a showing sufficient to establish the existence of an element essential to his case, summary judgment is appropriate. Id.; Matsushita Electricity Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

In this case, the question of whether a person is a seaman is normally a question for the trier of fact. Chauvin v. Sanford Offshore Salvage, Inc., 868 F.2d 735 (5th Cir. 1989). Within broad limits of what is reasonable, Congress has seen fit to allow juries to decide who are seaman and who are not. Id. (citing Offshore Co. v. Robinson, 266 F.2d 769 (5th Cir. 1959)). But summary judgment is proper on the question of seaman status where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences on any of the elements of the seaman test. Bernard v. Binnings Const. Co., Inc., 741 F.2d 824 (5th Cir. 1984.) (citing Androin v. J. Ray McDermott & Co., 641 F.2d 277 (5th Cir. 1985)). However, the question

2

of seaman status should only be removed from the trier of fact (by summary judgment or directed verdict) in rare circumstances and marginal Jones Act claims should be submitted to the jury. Bernard, 741 F.2d 827 (citing Leonard v. Exxon Corp., 581 F.2d 522 (5th Cir. 1978)) (submission of Jones act claims to a jury requires a very low evidentiary threshold, even marginal claims are properly left for jury determination.").

**III.  Seaman Status**

In order to establish seaman status for Jones Act purposes, plaintiff must establish that: (1) his duties contributed to the function of the vessel or to the accomplishment of its mission; and (2) that he had a connection to a vessel or an identifiable fleet of vessels in navigation that was substantial in terms of both its duration and nature. Harbor Tug & Barge Co. v. Papai, 520 U.S. 548 (1997).  Hufnagel v Omega Service Ind., Inc., 182 F.3d 340 (5th Cir. 1999). Any identifiable fleet of vessels must be under common ownership or control.   Roberts v. Cardinal Services, Inc., 266 F.3d 368 (5th Cir. 2001).

**1. Contributing to the Function of the Vessel or to the Accomplishment of its Mission.**

In Chandris, the Supreme Court noted that the threshold required to contribute to the function of a vessel or the accomplishment of its mission is quite low.

> [A]n employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. The Jones Act's protections, like the other admiralty protections for seamen, only extend to those maritime employees who do the ship's work. But this threshold requirement is very broad: All who work at sea in the service of a ship are eligible for seamen status.  (Citations omitted).

Chandris, Inc. v. Latsis, 515 U.S. 347, 357  (1995).

Defendant first asserts that the plaintiff did not contribute to the function of the subject vessel he was working on nor did he contribute to the accomplishment of its mission. Instead, defendant

suggests that the work of the plaintiff is "classic stevedoring work" as discussed in Balfer v. Mayronne Mud & Chemical Co., Inc., 762 F.2d 432 (5th Cir. 1985) and not that of a seaman. The defendant also notes that the plaintiff never ate or slept aboard the subject vessel nor did he contribute to the vessel's navigation.

The plaintiff responds that the barge's mission was to carry concrete girders to build a bridge and because the plaintiff helped load the girders onto the vessel he was contributing to the accomplishment of that mission.

Defendant's reliance on Balfer v. Mayronne Mud. & Chemical Co., Inc., 762 F.2d 432 (5th Cir. 1985) is unpersuasive.[2] In Balfer, the Fifth Circuit found that "sporadic and infrequent" forays onto vessels while loading and unloading to be classic stevedore work and not the work of a seaman. Id. Viewing the facts in the case at bar in a light most favorable to the plaintiff, a trier of fact could reasonably conclude that the loading of the girders in this case was anything but "sporadic and infrequent." The plaintiff has testified that he would sometimes spend eight hours on the vessel. See Bridges Dep. at 33. Unlike Balfer, if taken as true, the testimony that the plaintiff would spend 6 to 8 hours on one of the subject vessels is not a sporadic or infrequent foray. Moreover, the notion that a plaintiff must be aiding in the navigation of the vessel has long been abandoned by the Fifth Circuit in Offshore Co. v. Robinson, 266 F.2d 769 (5th Cir. 1959) and later by the Supreme Court in McDermott Inter., Inc. v. Wilander, 498 U.S. 337 (1991). Therefore, considering the broad nature of this element of the Chandris test, this Court finds that a trier of fact could reasonably determine that the mission of the vessel was to deliver the girders to the project site and by loading the vessel

---

[2] The defendant also cites Burns v. Anchor-Wate Co., 469 F.2d 730 (5th Cir. 1972). He analogizes the activity of the plaintiff in Burns to the plaintiff in the case at bar stating that the employment of the two is "nearly identical." But like the Balfer case, this Court finds Burns distinguishable on much the same grounds.

with girders for up to eight hours a day, the plaintiff was assisting in the accomplishment of the mission of subject vessel or fleet of vessels.

**2. The Plaintiff Must Have a Connection to a Vessel In Navigation or to an Identifiable Group of Vessels that is Substantial in Both Duration and Nature.**

The second prong of the Chandris test requires a seaman to have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. Chandris Inc. v. Latsis, 515 U.S. 347 (1995). Justice O'Conor, writing for the Majority wrote,

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation and therefore whose employment does not regularly expose them to the perils of the sea.
>
> This requirement therefore determines which maritime employees in Wilander's broad category [That the employee contribute to the function of the vessel or to the accomplishment of its mission] of persons eligible for seaman status because they are "doing the ship's work" are in fact entitled to the benefits conferred upon seamen by the Jones Act because they have the requisite employment related connection to a vessel in navigation.

Chandris, 515 U.S. at 368. In order to make the determination of who was intended to be protected by the Jones Act, the Supreme Court has looked to the meaning and the purpose of Jones Act itself reading it in the light of the mischief to be corrected and the end to be attained. Chandris 515 U.S. at 369 citing Warner, 293 U.S. at 145. Applying this guiding princple the Court has recognized that Congress did not intend for stevedores, who are land-based workers, to receive Jones Act protection regardless of whether they are engaged in a maritime service formerly rendered by the ship's crew. Swanson v. Marra Brothers, Inc., 328 U.S. 1 (1946). A brief discussion of the Supreme Court's present and historical view of land-based workers and the passage of the Longshore and

5

Harbor Worker's Compensation Act (LHWCA) reveals the dichotomy between a Longshoreman (Stevedore) and a Seaman (crewman).

In International Stevedoring Company v. Haverty, 272 U.S. 50 (1926), the Supreme Court addressed the question of whether a longshoreman injured while stowing cargo and while aboard but not employed by a vessel at dock in navigable waters, was a seaman covered by the Jones Act. In that case, the Supreme Court recognized that stevedores are not seaman. Id. Nevertheless, the Court concluded that Congress did not intend to created a dichotomy between land-based workers who were doing a maritime service. Id. Subsequent to the Haverty decision, Congress passed the LHWCA in 1927. Afterwards, the Supreme Court recognized that with the passage of the LHWCA, Congress intended to undercut the Supreme Court's reasoning employed by Haverty and its progeny. See Swanson v. Marra Brothers,Inc., 328 U.S. 1 (1946) (where the court acknowledged that Congress had expressed its intention to confine the benefits of the Jones Act to the members of the crew of a vessel plying in navigable waters and to substitute for the right of recovery recognized by the Haverty case only such rights to compensation as are given by [the LHWCA]). After recognizing this fundamental distinction, the Supreme Court emphasized that the Jones Act coverage depends "not on the place where the injury is inflicted...but on the nature of the seaman's service, his status as a member of the vessel, and his relationship as such to the vessel and its operation in navigable waters." Chandris, 515 U.S. at 360 (citing Swanson, 328 U.S. 1 (1946)).

With all of these guiding principles, this Court now examines the relationship that existed between the plaintiff and a vessel or an identifiable fleet of vessels in regards to both duration and nature.

**A. Identifiable Vessel or Fleet of Vessels**

In order for a plaintiff to receive Jones Act protections he must have a connection with an identifiable vessel or fleet of vessels. Chandris, 515 U.S. at 368. Where the plaintiff asserts a

6

connection to a fleet of vessels, that fleet must be under common ownership or control.  Braniff v. Jackson Avenue-Gretna Ferry, Inc., 280 F.2d 523 (5th Cir. 1960).

The defendant argues that the plaintiff was not assigned to any identifiable fleet of vessels.  He cites to the plaintiff's deposition, page 123.  Def. Mot. Summ. J. at 3 (citing Dep. Jackie Bridges at 123).  However, a perusal of that page reveals there is no discussion of whether the plaintiff was assigned to a vessel or a fleet of vessels.

In response, the plaintiff cites to the deposition of William Allen, the Standard Concrete Products, Inc. transportation manager.  There Mr. Allen verified that between February 2007 until the accident, Mr. Bridges worked primarily on various barges owned by the defendant.  Def. Mot. Opp'n. Summ. J. at 3 (citing Dep. William Allen, at 22-27).

Even if this Court found that the defendant successfully put forward evidence supporting a finding that there was no identifiable vessel or fleet of vessels, the testimony of Mr. Allen would be sufficient enough to rebut such evidence.  This Court finds that there exists a genuine issue of material fact sufficient to defeat summary judgment on this subelement.

**B.  Duration of the Relationship Between Plaintiff and the Subject Vessel**

The Fifth Circuit has analyzed the temporal element of the relationship between a plaintiff and a vessel or fleet of vessels in terms of percentage of work performed on vessels and has declined to find seaman status where the employee spent less than 30 percent of his time aboard a subject vessel.  Palmer v. Fayard Moving & Transp. Corp., 930 F.2d 437, 439 (5th Cir.1991); Lormand v. Superior Oil Co., 845 F.2d 536, 541 (5th Cir.1987).  The Supreme Court has regarded the Fifth Circuit's "30 perecent rule" as an appropriate rule of thumb, but noted that departure from the rule could be justified in appropriate cases.  Chandris, 515 U.S. at 370.  Viewing the facts in the light most favorable to the plaintiff, this Court now analyzes whether the plaintiff has created a material issue of fact with regard to the amount of time he spent aboard the subject vessel.

7

The defendant asserts that the plaintiff spent no more than a few hours on each barge. See Def. Mot. Summ. J. at 6 (citing Dep. Jackie Bridges, at 28, 31, 36-37, 49-50, 123). They assert that such a limited amount of time aboard a vessel is insufficient to satisfy the temporal element.

The plaintiff counters that he also testified that he sometimes spent as much as eight hours on the subject vessels. Id. at pp. 33. Plaintiff concludes that this is sufficient to establish a substantial connection with regard to the temporal relationship between Mr. Bridges and the subject vessels.

Viewing the facts in a light most favorable to the plaintiff, this Court finds that the testimony of the plaintiff that he would sometimes spend as little as two hours and sometimes as much as eight hours on the subject vessels creates a material issue of fact with regard to the temporal relationship that existed between the plaintiff and the subject vessel. See Dep. Bridges at 33. However, as noted by the Supreme Court in Chandris, the relationship must be substantial in both duration and nature. It is the nature of the plaintiff's relationship that gives this Court reason to pause.

### C. Nature of the Relationship Between Plaintiff and Subject Vessel

The defendant frames the relationship between the plaintiff and the subject vessels as one of a stevedore and vessel and not as seaman and vessel. Defendant argues that the plaintiff is not employed by the owners of the fleet of barges with which he asserts a substantial relationship, but rather is an employee of a land based entity. Furthermore, the defendant highlights the fact that the plaintiff's only connection with the subject vessels involve his loading of materials onto the vessel, that he has never performed maintenance on the vessel, never slept or inhabited the vessel, never sailed more than a few feet and then only under maneuvering situations, he never assisted with the vessel to unload its cargo nor has he experienced the perils of the sea.

Plaintiff fails to counter these specific facts and provides this Court with no evidence that

8

the relationship was one substantial in nature. He cites to no case whereby a court has found that the loading and securing materials onto a vessel is sufficient to establish a relationship presupposed by the Jones Act. Should this matter proceed to trial, the plaintiff will bear the burden of proving to a trier of fact that the relationship with the identifiable fleet of vessels was one substantial in nature. The record is void of such evidence.

It is this Court's opinion that the plaintiff's loading of cargo is classic stevedoring work as further evidenced by the favorable decision in his action for compensation under the LHCWA. See Balfer v. Mayronne Mud. & Chemical Co., Inc., 762 F.2d 432 (5th Cir. 1985). More importantly, this Court concludes that the plaintiff's relationship with the fleet of vessels lacks the nature presupposed by Congress. He is the very plaintiff Congress desired to exclude from Jones Act protection. The law post Haverty, requires that the plaintiff be more than a stevedore. The plaintiff has provided no evidence to this effect. In this regard, because the plaintiff has not created a material issue of fact with regard to the nature of the relationship between the subject vessel and himself no reasonable trier of fact could conclude that such a relationship existed. Therefore, it is the ORDER of this Court that summary judgment be entered in favor of defendant Standard Concrete Products and plaintiff's claims against defendant Standard Concrete Products are HEREBY dismissed with prejudice.

New Orleans, Louisiana, this 6th day of November, 2008.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**

9